UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES M. ATKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 11-11073-NMG |
| TOWN OF ROCKPORT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON MOTION OF CAPE ANN
CHAMBER OF COMMERCE AND CHARLENE BROWN
TO DISMISS THE THIRD AMENDED COMPLAINT**

November 8, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, James M. Atkinson ("Atkinson"), has filed a 474-page *pro se* complaint naming well over 100 defendants, including the Cape Ann Chamber of Commerce (the "Chamber") and its employee, Charlene Brown ("Brown"). This matter is presently before the court on the Chamber's and Brown's Motion to Dismiss (Docket No. 77), pursuant to which these defendants are seeking to have the Third Amended Complaint ("Compl.")[1] dismissed as against them for failure to comply with the pleading requirements of Fed. R. Civ. P. 8. "While a court may dismiss a pleading that does not comply with the notice pleading requirements of Rule 8, the exercise of this power is

---

[1] On July 19, 2011, the court ordered that the Third Amended Complaint (Docket No. 6) is the operative pleading in this case.

generally reserved for a pleading that is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" Black v. UNUMProvident Corp., 245 F. Supp. 2d 194, 197 (D. Me. 2003) (quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995)). Because the Third Amended Complaint is such a pleading, this court recommends to the District Judge to whom this case is assigned that the motion of the Chamber and Brown to dismiss be ALLOWED.

## II. STATEMENT OF FACTS

The instant motions to dismiss mirror those filed by other defendants. This court has issued Report and Recommendations ("R&Rs") recommending the dismissal of the Third Amended Complaint against the Rockport Defendants (Docket No. 205), the Attorney General Defendants (Docket No. 210), Peter W. Curatolo (Docket No. 216), the Hospital Defendants (Docket No. 217), Michael Arsenian (Docket No. 218), the Montserrat Defendants (Docket No. 221) and John Good (Docket No. 222) for failure to comply with Fed. R. Civ. P. 8. In those R&Rs, this court has detailed the allegations of the Complaint and the causes of action asserted by Atkinson. This court will assume that the reader is familiar with those R&Rs, and those facts will not be repeated here.

### Allegations Against the Chamber and Brown

Atkinson has made generalized and conclusive assertions of wrongdoing against the Chamber and Brown, but has failed to put forth any facts in support of his claims. For example, but without limitation, Atkinson contends that the Chamber is and was "a[n] extension of a state agency, performing the bidding, and under the control and/or

influence of state law enforcement agencies." Compl. ¶ 196. The Chamber, it is alleged, "had knowledge that the wrongs hereinafter mentioned were and continue to be done; conspired with others to commit, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do." Id. ¶ 199. Moreover, Atkinson asserts that the Chamber "directly deprived, violated, and infringed upon Plaintiff's civil rights, with malice, and with careful planning and conspiracy with others," and implemented "the custom, practice and usage which violated and continue to violate Plaintiff's constitutionally, statutory and regulatory rights, activities, privileges, and immunities[.]" Id. ¶¶ 200-01. However, the plaintiff has alleged no facts from which the Chamber can adduce what conduct is actually being challenged.

The same deficiencies exist with respect to Brown. She "is sued in his/her official capacity and individually as a Worker for Cape Ann Chamber of Commerce, responsible for executing and administering the laws and polices at issue in this lawsuit." Id. ¶ 338. Atkinson has alleged with respect to Brown:

> Defendant directly deprived, violated, and infringed upon Plaintiff's civil rights, with malice, and with careful planning and conspiracy with others. Further, this defendant has engaged in conduct and as a continuing unit of an enterprise, through a pattern, of racketeering enterprises (including, but not limited to: mail fraud, wire fraud, scheme to defraud, robbery, kidnapping, obstruction of justice, interference in commerce, also involving monetary transactions in property derived from specified unlawful activity), and have caused injury to the business and/or property of the Plaintiff Atkinson. This Defendant has exceeded, and overstepped their authority and

> violated the Constitutional rights of the Plaintiff, infringing and deprived him of his civil rights. Defendant resides at ....

Id.

The Chamber and Brown are listed among the defendants who, "[w]hile acting as a State Agency" "did deprive Plaintiff his rights under the 1st, 2nd, 4th, 5th, 7th, 8th, and 14th Amendments, and deprived Plaintiff of his civil rights under color of authority" in Count 54 of the Complaint. Id. ¶ 523. While no factual details are included, in this Count Atkinson alleges that the numerous defendants referred to therein have passed and enforced unconstitutional laws and policies (¶ 524), "have acted with deliberate indifference to the Plaintiffs serious medical needs" (¶ 525), have exceeded their authority and violated his constitutional rights (¶ 526), and have engaged in a pattern of racketeering (¶ 530) among other things. Count 55 of the Complaint, which purports to state a claim for civil rights violations, trafficking "in illegal eavesdropping and medical devises," and violating "export controls," is directed to defendants other than the Chamber and Brown, but mentions them. Specifically, Atkinson alleges that an unspecified defendant directed a customer of the plaintiff in Switzerland to contact the Rockport Police Department and the Chamber, "and to file a criminal complaint alleging that Plaintiff was attempting to 'steal' the customer's money (when in fact the Defendant was in possession of the funds, and was delaying shipping the goods." Id. ¶ 593. Based on these allegations, in his opposition to the motion to dismiss Atkinson summarizes his claims against the Chamber and Brown as follows:

> The Chamber of Commerce allowed Charlene Brown and other employees to engage in a conspiracy involving illegal arms smuggling, closely coordinating the conspiracy with members of the Rockport Police Department, and with foreign entities, and with a foreign government who were attempting to illegally, and covertly smuggle controlled military arms out of United States in violation of both U.S. laws and international treaties, to subvert U.S. Export laws, and indeed to subvert nation and international security.

Pl. Opp. (Docket No. 126) at 5. Moreover, Atkinson contends that the Chamber and Brown were agents of the Rockport Police Department and "also acting as un-registered agents of Foreign Influence on behalf of the government of Kazakhstan and Uzbekistan[.]" Id. at 6. In addition, these defendants allegedly "conspired" with the Rockport Police Department, and "acting under the color of law and as an agent of the police and of foreign governments, to create a chain of events that did deprive the Plaintiff of his civil rights and with the Defendant operating other rights under law." Id. at 10. According to Atkinson, since the deprivation of his rights "was a continuum of interconnected events," these defendants should be liable for "the entirety of the infringement" even though they may have had "peripheral involvement[.]" Id. at 10-11.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

The analysis of the viability of Atkinson's claims against the Chamber and Brown mirrors that of the sufficiency of the Complaint against other defendants. Thus, Fed. R. Civ. P. 8(a) provides in relevant part that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to

relief. . . ." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Phelps v. Local 0222, No. 09-11218-JLT, 2010 WL 3342031, at *5 (D. Mass. Aug. 20, 2010) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (quotations and citations omitted)). In addition, the pleadings "must afford the defendants a meaningful opportunity to mount a defense." Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc., No. 11-40126-FDS, 2011 WL 2681195, at *2, (D. Mass. July 6, 2011) (quoting Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 123(1st Cir. 2004)) (internal punctuation and additional citations omitted). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Id. (quotation omitted).

While the "First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers," "this cannot be taken to mean that pro se complaints are held to no standard at all." Green v. Massachusetts, 108 F.R.D. 217, 218 (D. Mass. 1985). Thus, "the requirements of Rule 8(a)(2) are minimal – but minimal requirements are not tantamount to nonexistent requirements." Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004) (internal quotation omitted).

In the instant case, the complaint is "excessively long and unnecessarily redundant." Kuehl v. FDIC, 8 F.3d 905, 908 (1st Cir. 1993) (43-page complaint with 36 counts and 30 defendants dismissed for failure to comply with Fed.R.Civ.P. 8). It is also "prolix, wandering, [and] impenetrable[,]" and replete with "irrelevant rhetorical

-6-

flourishes." Sherwood Forest Neighbors Ass'n, Inc. v. Town of Becket, 466 F. Supp. 2d 399, 401 (D. Mass. 2006) (dismissing complaint for failure to comply with Fed. R. Civ. P. 8). As detailed above, it is impossible to ascertain from the pleadings what conduct the Chamber or Brown engaged in, or what unlawful events occurred. Even assuming that Atkinson's summary of his claims as found in his opposition to the motion to dismiss were actually in the Complaint, there is no indication as to what conduct is actually being challenged. Nor are there any facts describing who did what, or where and why events allegedly occurred. Ignoring the "bald assertions, unsupportable conclusions, and opprobrious epithets" leaves the defendants without an explanation of the claims against them. See Educadores Puertorriquenos, 367 F.3d at 68 ("in considering motions to dismiss courts should continue to eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets") (quotation omitted). Moreover, despite repeated claims that the numerous defendants conspired with each other, there are no details as to "what part each defendant had in the alleged conspiracy," or any "allegations of a common understanding between the conspiring parties." Benyamin, 2011 WL 2681195, at *3 (quotations omitted). The generalized conclusion that a conspiracy existed is insufficient to state a cognizable claim. See Blackhouse v. TLC Props., No. 10-385-B-W, 2010 WL 3780990, at *4 (D. Me. Sept. 21, 2010), and cases cited.

In his opposition to these defendants' motion to dismiss, as with the others, Atkinson argues that the complaint is readable and understandable, asserting that it "has a Flesch-Kincaid (English) Reading Ease score of 23," which makes it easier to understand

than many other publications.  Pl. Opp. (Docket No. 126) at 14.  However, this argument misses the mark.  It is not that the words the plaintiff uses are incomprehensible.  Rather, it is the fact that the complaint as a whole is unduly complicated and lengthy, and consists of unfocused allegations that fail to include facts describing "who did what to whom, when, where and why," which renders it insufficient to meet the pleading standard set forth in Fed. R. Civ. P. 8(a).  See Benyamin, 2011 WL 2681195, at *2 (quotations and citation omitted).  Moreover, the plaintiff has attempted to combine seemingly unrelated defendants and seemingly unrelated charges, which range from medical injury to international intrigue, without explanation, thereby rendering the complaint incomprehensible.

In his opposition to the motion to dismiss, Atkinson also contends that the Motion to Dismiss should be stricken because the Chamber and Brown did not file timely answers and are in default, and because they failed to confer as required by L.R. 7.1(A)(2) before filing the motion.  See Pl. Opp. (Docket No. 126) at 1-4, 7-8.  However, Atkinson's request for a notice of default against the Chamber and Brown was denied on October 12, 2011 because responsive pleadings (*i.e.*, the motion to dismiss) had been filed before the request for default, and because the plaintiff was not prejudiced.  See Docket Entry 10/12/11.  Moreover, given the complexity of the pleadings, the number of defendants involved, the fact that Atkinson has filed a number of motions and amended complaints without any attempt at conferring, and the fact that "[t]here can be no doubt that [Atkinson] would have opposed the motion . . . and discussion would not have likely

resolved or narrowed any of the issues involved[,]" the failure to confer is not grounds for striking the motion to dismiss. See Blanchard v. Swaine, Civil No. 08-40073, 2010 WL 4922699, at *5 (D. Mass. Nov. 29, 2010), and cases cited; Steele v. Turner Broadcasting System, Inc., 746 F. Supp. 2d 231, 239 (D. Mass. 2010) ("The Court agrees that prior consultation is an important precursor to motion practice but does not find the breach of that procedure in this case to be controlling").

In sum, Atkinson's "complaint falls into the category of 'complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim.'" Phelps, 2010 WL 3342031, at *5 (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151-52 (S.D.N.Y. 1972)) (additional citation and punctuation omitted). Since the complaint fails to comply with the requirements or goals of Fed. R. Civ. P. 8(a)(2), it should be dismissed. Id.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion of the Cape Ann Chamber of Commerce and Charlene Brown to Dismiss Plaintiff's Third Amended Complaint (Docket No. 77) be ALLOWED.[2]

                                                / s / Judith Gail Dein
                                                Judith Gail Dein
                                                United States Magistrate Judge

---

[2] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).